IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MICHAEL J. MCFARLAND,**            Case No. 1:16 CV 308

    Plaintiff,

    v.                                        Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                         MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Michael J. McFarland ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 22). For the reasons stated below, the undersigned affirms the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI in February 2009, alleging disability as of October 16, 2008. (Tr. 503-09). His claims were denied initially and upon reconsideration. (Tr. 178, 182, 186, 193). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 200-01). Plaintiff (represented by counsel) and a vocational expert ("VE") testified at a hearing before the ALJ on October 17, 2011. (Tr. 38-84). On January 25, 2012, the ALJ found Plaintiff not disabled. (Tr. 153-66). On June 7, 2013, the Appeals Council vacated the

ALJ's decision and remanded the case for a new hearing. (Tr. 172-74). A second hearing was held before an ALJ on April 8, 2014, at which time Plaintiff (represented by counsel) and a VE testified. (Tr. 85-148). In a written decision dated July 8, 2014, the ALJ found Plaintiff not disabled. (Tr. 13-30). The decision became final on December 16, 2015, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-3); 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed the instant action on February 9, 2016. (Doc. 1).

## FACTUAL BACKGROUND[1]

VE Testimony

At the administrative hearing on April 8, 2014, the ALJ asked the VE to consider whether a hypothetical individual with Plaintiff's age, education, work experience and residual functional capacity ("RFC") could perform work. (Tr. 105-07). The VE testified such an individual would be able to perform the occupations of table worker (Dictionary of Occupational Titles ("DOT") No. 739.687-182), with 454,010 positions available nationally; cuff folder (DOT No. 685.687-014), with 419,840 positions available nationally; and document preparer (DOT No. 249.587-018), with 2,808,100 positions available nationally. (Tr. 107-08).

On cross-examination, Plaintiff's counsel inquired whether the three identified occupations provided a "calm and consistent" setting. (Tr. 112). The VE responded that, considering the type of work, "there would be no reason for [her] to believe that it wasn't calm. It's rote and it's repeat." (Tr. 112-13). Plaintiff's counsel then asked whether the jobs would be calm if an emergency occurred, such as a fire or fire drill. (Tr. 113). The VE stated that there was

---

1. Plaintiff challenges only the VE's testimony regarding the availability of certain jobs in the national economy at Step Five of the sequential evaluation. *See* 20 C.F.R. §§ 404.1520(g), 416.912(f). Plaintiff has waived argument on issues not raised in his opening brief. *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003). The Court, therefore, finds it unnecessary to summarize the medical record and focuses rather on the procedural history of this case.

"no guarantee that the setting would always be calm" because there were an "infinite number of situations that could possibly occur at any given time, at any given place, at any given job", including a thunderstorm. *Id.* Plaintiff's counsel next asked the VE whether a supervisor at one of the three jobs could be aggressive or confrontational. (Tr. 114). The VE responded that was possible because there was no guarantee as to a supervisor's personality. *Id.* Plaintiff's counsel then inquired as to whether the three identified occupations always had clear performance expectations. *Id.* The VE responded that the performance expectations are "as clear as the employer makes them." (Tr. 115).

Plaintiff's counsel next asked the VE about the number of available jobs she provided for the table worker occupation. (Tr. 115-16). The VE clarified that the number she gave (454,010 positions) were actually for the broader occupational employment survey ("OES") group, containing 782 unique DOT codes, one of which is table worker. (Tr. 116). She noted for the table worker DOT code cited, there were 2,538 jobs available nationally, 123 jobs in Ohio, and 8 jobs in Toledo. (Tr. 116, 123). The VE added there were other DOT code occupations which fit into the hypothetical, including button reclaimer (Tr. 116), weight tester, zipper trimmer, copy examiner, touch-up screener, shattlegraff scale operator, lungeblock gouger, cigarette making machine catcher, film touch-up inspector, nut sorter, and dowel inspector (Tr. 123). She felt "confident" that at least 10 percent of the jobs in the OES group "fall into the same limitations . . . described . . . in the hypothetical". (Tr. 117-18). She added this was a "very conservative" estimate because the OES group contained more unskilled occupations than skilled occupations. (Tr. 118-19).

Plaintiff's counsel also asked the VE whether she knew of anyone examining felt-based linoleum squares within the last five years in the national economy, a task involved with the

table worker occupation. (Tr. 126). The VE responded there was such work in Birmingham, New York, and, pursuant to the information in Job Browser Pro and SkillTRAN, there were eight positions in Toledo, Ohio. (Tr. 127). The VE noted the information in the Job Browser Pro and SkillTRAN was "very reliable" and "the best information that's available." (Tr. 128). The VE relied heavily on her "experience and knowledge" in analyzing the information. (Tr. 130).

Also, the VE departed from the DOT's description of the occupation of document preparer. (Tr. 132). The VE explained that the task of microfilming was not commonly performed anymore. *Id.* She noted the job now essentially involves collating. (Tr. 133). Plaintiff's counsel inquired whether there was another DOT title for collator, and the VE responded that there is a collator operator occupation, but it requires light exertion. *Id.*

ALJ Decision

With regard to a brief submitted by Plaintiff's counsel the day after the administrative hearing (*See* Tr. 425-27), the ALJ overruled Plaintiff's objections to VE testimony regarding the availability of certain jobs in the national economy (Tr. 17). He explained:

> In a post-hearing brief filed on April 9, 2014, the claimant's representative outlined the objections to the vocational testimony that were initially brought forth at the hearing. The claimant's representative argued that the four occupations named by the vocational expert cannot be shown to exist in significant numbers in the national economy. Specifically, the claimant's representative objected to the use of full Occupational Employment Survey groups and the SkillTRAN method as reliable ways to estimate the number of jobs in the national economy for a specific occupational title.
>
> This objection is OVERRULED. First, there is no requirement in the applicable rules and regulations that a sum certain be identified by the experts, and the courts have not required the level of testimonial perfection by vocational experts that the claimant's attorney appears to advocate. Instead, the undersigned need only decide whether jobs exist in "significant numbers" in the national or regional economies (*see* 20 C.F.R. §§ 404.1560(c) and 416.960(c)). Second, Social Security regulations indicate that a sufficient basis for vocational expert testimony can be the expert's professional knowledge and experiences, as well as reliance on job information available from various governmental and other publications, of

which the undersigned takes administrative notice (*see* 20 C.F.R. §§404.1560(b)(2), 404.1566(d), 416.960(b)(2), and 416.966(d)). The Occupational Employment Survey is a publication of the Bureau of Labor Statistics, of which the undersigned has taken administrative notice. Moreover, the vocational expert is a highly qualified expert in the area of vocational rehabilitation with a master of science in rehabilitation counseling and over 28 years of experience as a vocational rehabilitation counselor, Exhibit 30B, and she acknowledged that the representative occupations that she cited were part of a larger grouping of jobs (SOC code), that not all of the occupations within that larger grouping were consistent with the hypothetical limitations presented, and that her testimony was based upon her expert knowledge and experience as well as information contained in specified and reliable vocational resource materials and programs. The undersigned therefore finds that the vocational expert had a sufficient basis for her testimony, and finds that such testimony did indeed demonstrate the existence of a significant number of jobs in the national economy consistent with the claimant's assessed residual functional capacity and vocational factors.

*Id.*

The ALJ also made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since October 16, 2008, the alleged onset date.

3. The claimant has the following severe combination of impairments: coronary artery disease, borderline intellectual functioning, obesity, COPD, diabetes, hypertension, degenerative spinal changes, depression, anxiety disorder, and substance abuse (alcohol).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with no more than 1 hour of continuous walking and no more than 2 hours of continuous standing required, can only occasionally climb ramps or stairs, is precluded from climbing ladders, ropes, or scaffolds and from balancing on uneven surfaces, can occasionally stoop, is precluded from kneeling, crouching, and crawling, is precluded from exposure to temperature extremes, excessive wetness, excessive humidity, and environmental irritants, reads and writes at a

    rudimentary elementary school level, and is limited to performing simple, routine, and repetitive tasks, in a work environment free of fast paced production requirements, involving only simple work related decisions, with few, if any, changes in the work place, no required interaction with members of the general public, only occasional interpersonal interaction with coworkers and supervisors, and requires a calm and consistent setting with clear performance expectations.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on December 5, 1971 and was 36 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 16, 2008, through the date of this decision.

(Tr. 13-30) (internal citations omitted).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings

"as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work

in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff objects only to the ALJ's Step Five determination, alleging: (1) the ALJ erred in relying on inaccurate VE testimony regarding the number of jobs available to Plaintiff; (2) one of the available jobs named by the VE was "essentially obsolete"; and (3) the jobs identified by the VE did not fit the hypothetical question used to support the ALJ's RFC determination.

At the final step of the disability analysis, the ALJ must decide whether, in light of the claimant's RFC, age, education, and past work experience, the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(a)(4). The Commissioner has the burden to show that jobs exist in significant numbers in the national economy which claimant can perform. 20 C.F.R. § 416.969; *Hall v. Bowen*, 837 F.2d 272, 272 (6th Cir. 1988); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). An ALJ may rely on a VE's testimony to provide substantial evidence that a claimant is not disabled. *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). Under the Regulations, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 416.966(a). There is no bright-line boundary separating a "significant number" from an insignificant numbers of jobs. *Hall*, 837 F.2d at 275 (6th Cir. 1988). The Sixth Circuit has found 125 jobs in a local geographic area and 400,000 jobs nationwide constituted significant jobs. *Stewart v. Sullivan*, 1990 WL 75248, *4 (6th Cir. 1990).

A reviewing court should "consider many criteria in determining whether work exists in significant numbers" including "the level of the claimant's disability[,] the reliability of the [VE's] testimony[,] the reliability of the claimant's testimony[,] the distance claimant is capable of travelling to engage in the assigned work[,] the isolated nature of the jobs[,] the types and availability of such work, and so on." *Id*. The Sixth Circuit later clarified these factors were mere "suggestions" and that "the ALJ need not explicitly consider each factor." *Harmon v. Apfel,* 168 F.3d 289, 292 (6th Cir. 1999).

First, Plaintiff argues the number of available jobs relied upon by the ALJ were not accurate and even "discredited by the [VE's] own testimony". (Doc. 16, at 14). At the hearing, the VE determined an individual with Plaintiff's age, education, work experience, and RFC could perform work as a table worker with 454,010 nationally available positions, cuff folder with 419,840 nationally available positions, and document preparer with 2,808,100 nationally available positions. (Tr. 107-08). The VE later acknowledged the job figures she provided for the table worker, were actually available job numbers for a broader OES group consisting of 782 unique DOT occupations. (Tr. 116). She clarified that there were 2,538 table worker jobs available nationally (Tr. 116, 121-22) and eight jobs available in Toledo (Tr. 123, 127). The VE stated the OES group of 782 occupations consisted of a variety of other jobs the individual could perform, including button reclaimer (Tr. 118), weight tester, zipper trimmer, copy examiner, touch-up screener, shattelgraff scale operator, lungeblock gouger, cigarette making machine catcher, film touch-up inspector, nut sorter, and dowel inspector[2] (Tr. 116, 123-24).

Plaintiff's counsel later confirmed with the VE that according to Job Browser Pro, 14 of the 782 occupations were both sedentary and unskilled positions (Tr. 124), and with regard to the

---

2. Plaintiff does not address these occupations.

job of cuff folder, the number of 419,840 available jobs was actually for a broader OES group (Tr. 140). However, the VE noted there were "a lot of jobs that are out there that would fit the sedentary unskilled position with . . . occasional climbing of ramps and stairs; no climbing ladders, ropes, and scaffolds; no balancing; occasional stooping; no kneeling crouching, crawling; no tough turn strains . . . ; no environmental irritations, but those jobs . . . may not even be identified specifically in a DOT code because many employers use different—in job titles." (Tr. 125).

The VE estimated the hypothetical individual could perform ten percent of the 782 unique DOT occupations—according to her, a "very conservative" estimate. (Tr. 118). She used Job Broswer Pro and SkillTRAN to make these determinations (Tr. 120-21), and noted SkillTRAN was "very reliable to me, and in my opinion, it's the best information that's available." (Tr. 128). In addition, the VE noted she was "using [her] judgment, and . . . relying heavily on [her] experience and knowledge in knowing how jobs are done that exist". (Tr. 130).

In his decision, the ALJ found the VE appropriately relied upon her professional knowledge and experience, and job information from various sources. (Tr. 17). The ALJ acknowledged that numbers the VE first provided for a specific job were actually numbers available for the broader table worker OES group. (Tr. 29) ("With respect to the table worker occupational group, the [VE] indicated that an individual having the claimant's age, education, work experience and [RFC] could perform at least 10% of the jobs in that group, this representing 'a very conservative estimate[]'").[3] This number is just a portion of the jobs the VE determined Plaintiff could perform. The VE also noted Plaintiff could perform the job of cuff folder with 419,840 nationally available positions and document preparer with 2,808,100

---

3. Ten percent of the table worker occupational group jobs constitute 45,010 jobs.

nationally available positions. (Tr. 107-08). Thus, the ALJ appropriately determined Plaintiff retained an ability to perform a significant number of jobs in the national economy. (Tr. 28-30). It is insignificant that only eight of the table worker jobs were located in Toledo because those jobs were only a small fraction of jobs Plaintiff could perform. "[T]he test is whether work exists in the national economy, not in plaintiff's neighborhood" and "[t]he Commissioner is not required to show that job opportunities exist within the local area." *Harmon*, 168 F.3d at 292 (citing *Dressel v. Califano*, 558 F.2d 504, 508--09 (8th Cir. 1977)).

Plaintiff cites to *Browning v. Colvin*, 766 F.3d 707, 709 (7th Cir. 2014), to support his argument that the VE's reliance on the job numbers from the broader OES group was improper. (Doc. 16, at 15). First, *Browning* is not controlling. Second, *Browning* is distinguishable. In *Browning*, the Seven Circuit criticized a method employed by some VEs wherein job numbers for an entire OES group are simply divided by the number of specific DOT classifications within that larger group. *Browning*, 766 F.3d at 709. The court also criticized the practice of only providing job numbers for the broader OES group, but not discussing which specific jobs within that group an individual could perform. *Id.* Here, the VE discussed specific occupations with the table worker OES group which the hypothetical individual could perform. (Tr. 116, 123). Plaintiff is correct that the VE did not break down specific job numbers for cuff folder (Doc. 16, at 16), but this is not determinative. In concluding significant jobs existed Plaintiff could perform (Tr. 28), the ALJ noted the VE found that Plaintiff could perform ten percent of jobs in the table worker OES group. (Tr. 29). The Court finds no error in the ALJ's reliance on the VE's testimony that jobs existed in significant numbers in the national economy that Plaintiff could perform.

Second, the Court need not reach Plaintiff's assertion that the job of document preparer is "essentially obsolete" (Doc. 16, at 17) because the VE found Plaintiff could perform a significant number of other jobs. Even so, this argument is not well-taken. Plaintiff cites to *Cunningham v. Astrue*, 360 F. App'x 606, 615-16 (6th Cir. 2010) to support the assertion the position of document preparer no longer exists. (Doc. 16, at 17-18). That case is distinguishable. In *Cunningham*, the VE relied on potentially outdated information in the DOT, while here, the VE, using her knowledge and experience, simply noted that the task of microfilming is no longer commonplace and has essentially been replaced by the task of collating. (Tr. 132-33). At the prompting of Plaintiff's counsel whether another DOT title existed for collator, the VE stated that there was the occupation of collator operator. (Tr. 133). The VE did not suggest the two occupations were similar. Nor did she suggest the job of document preparer is obsolete or has been replaced by the job of collator operator, which the VE noted at light exertion, the individual would be unable to perform. *Id.* The undersigned finds the VE appropriately used her knowledge and experience to supplement job descriptions in the DOT. *See* Social Security Ruling 00-4p, 2000 SSR LEXIS 8.

Third, contrary to Plaintiff's assertion, the jobs identified by the VE did fit the hypothetical question used to support the ALJ's RFC determination. With regard to the hypothetical question posed to the VE (upon which the ALJ relied to form the RFC) Plaintiff argues that while the VE initially stated the jobs provided would fit the limitation of "calm and consistent setting with clear performance expectations", "her later testimony suggested otherwise." (Doc. 16, at 18); *see* Tr. 23. The undersigned is unpersuaded by this argument.

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Varley v. Sec'y of Health & Human Servs.*, 820

F.2d 777, 779 (6th Cir. 1987)). If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do"). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, among other limitations, the ALJ's RFC limited Plaintiff to a "calm and consistent setting with clear performance expectations." (Tr. 23). Plaintiff alleges the VE indicated the occupations relied upon may not always be "calm and consistent". (Doc. 16, at 18-19). However, at the hearing the VE stated "there would be no reason . . . to believe" the jobs were not calm. (Tr. 112-13). On cross-examination, Plaintiff's counsel questioned the VE about various hypothetical emergency situations which may not be calm. (Tr. 113). As the VE noted, an emergency is possible at any time, at any workplace, but that does not mean the job is not generally "calm and consistent". *Id.* Any emergency situation obviously has the potential of disrupting an otherwise calm occupation and environment. The same rationale applies to Plaintiff's contentions about performance expectations and supervisors.

The mere facts that emergency situations could arise at any given time, supervisors may have different dispositions, and instructions are only as clear as someone makes them, does not negate the VE's testimony that the jobs identified are *generally* calm and consistent. If Plaintiff's argument were correct, there would be no positions available for someone requiring a calm and

13

consistent work environment because of the possibility for individual variation between jobs. The undersigned finds the VE's testimony consistent with the limitation in the RFC. Thus, the ALJ's decision is supported by substantial evidence. *Varley*, 820 F2d at 779.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI supported by substantial evidence, and therefore affirms the decision of the Commissioner.

        s/James R. Knepp II
United States Magistrate Judge